# EXHIBIT B

**DIP Term Sheet**

**Summary of Proposed Terms and Conditions for Senior Secured,**

**Superpriority Debtor-in-Possession Financing**

**Date: June 30, 2023**

The following term sheet (the "**Term Sheet**") represents the terms and conditions by which KB Silver Funding, LLC (the "**DIP Facility Lender**") will provide a senior secured, superpriority debtor-in-possession credit facility to the Debtors (as defined below) in connection with the Debtors' anticipated bankruptcy cases to be filed under subchapter V of Chapter 11 of Title 11 of the United States Code (the "**Chapter 11 Cases**").

This Term Sheet is condition upon the satisfaction of the following: (i) all conditions precedent set forth herein, including any modifications or supplements hereinafter requested by the DIP Facility Lender, are satisfied or waived in the sole discretion of the DIP Facility Lender, (ii) the DIP Facility Lender agrees to and executes this Term Sheet in form and substance acceptable to the DIP Facility Lender in its sole discretion, and (iii) a United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), in connection with the Chapter 11 Cases, authorizes and approves the DIP Facility on terms and conditions, including any modifications or supplements thereto, which are satisfactory to the DIP Facility Lender in its sole discretion and pursuant to order(s) of the Bankruptcy Court in form and substance acceptable to the DIP Facility Lender in its sole discretion.

| **DIP FACILITY TERMS** ||
|---|---|
| Borrowers / Debtors | File Storage Partners LLC, Afton Blockchain LLC; FilTech SPV LLC; and Midwest Blockchain Inc. (collectively, the "**Debtors**" and each a "**Debtor**"), as debtors and debtors in possession under title 11 of chapter 11 of the United States Code (the "**Bankruptcy Code**"). |
| DIP Facility Lender | KB Silver Funding, LLC ("**Lender**") |
| DIP Facility | The DIP Facility Lender shall extend to the Debtors, as joint and several obligors, a secured debtor-in-possession credit facility made available to the Debtors in the total principal amount of up to $1,500,000.00 (the "**DIP Facility**"), comprising new term loans made by, and other obligations owed to, the DIP Facility Lender on, and from time to time after, the Closing Date (as defined herein) (such new loans and obligations, the "**DIP Loans**" and commitments with respect to such DIP Loans, the "**DIP Commitments**") to be funded as set forth below under the heading "Availability and Draw Procedure," subject to the entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**" and, together with the Interim Order, the "**DIP Orders**") by the Bankruptcy Court approving the DIP Facility and the terms herein. All DIP Loans and other obligations outstanding under the DIP Facility shall become due and payable on the Maturity Date (as defined below). |
| | As used herein, the terms Interim Order and Final Order mean, as to each, an unstayed order, in form and substance satisfactory to the DIP Facility Lender in its sole discretion, entered upon an application or motion of the Debtors that is in form and substance satisfactory to the DIP Facility Lender in its sole discretion, which order: (i) authorizes the Debtors to enter into the transactions contemplated by this Term Sheet, including the authorization to borrow under the DIP Facility on the terms set forth herein, (ii) grants the superpriority claim status and senior priming and other liens contemplated in this Term Sheet, (iii) contains, subject to entry of the Final Order, provisions prohibiting claims against the collateral of the DIP Facility Lender pursuant to section 506(c) of the Bankruptcy Code, a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and |

1

| | |
|---|---|
| | a waiver of the equitable doctrine of marshalling, (iv) approves payment by the Debtors of all of the fees and expenses provided for herein, and (v) shall not have been stayed, vacated, reversed or rescinded or, without the prior written consent of the DIP Facility Lender in its sole discretion, amended, or modified. |
| Availability and Draw Procedure | The DIP Facility shall be made available for the purposes set forth below under the heading "Use of DIP Loan Proceeds" in the total principal amount of up to $1,500,000.00, with the principal amount of $235,000.00 available on the first (1st) business day after entry of the Interim Order (the "**Interim Amount**") and the balance available on the first (1st) business day after entry of the Final Order (the "**Final Amount**"); provided that, any such advance from the DIP Facility (each, a "**Draw**") shall be conditioned upon the following: (a) no Default or Event of Default having occurred and be continuing as of the date of such Draw, (b) the representations and warranties set forth herein shall be true and correct in all material respects as of the date of such Draw, and (c) compliance by the Debtors with the Sale Milestones (as defined herein) as of the date of such Draw.<br><br>Subject to the foregoing conditions and such other conditions as set forth in this Term Sheet being met, requests for Draws by the Debtors shall be honored by the DIP Facility Lender in accordance with the following procedures:<br><br>    a. <u>Written Request</u>. The Debtors shall have delivered to the DIP Facility Lender a written request (email being sufficient) for a Draw at least two (2) business days prior to the date that the Draw will be transferred to the Debtors. The request shall (i) specify the amount of the Draw, (ii) state the date that the Draw is requested, (iii) provide wiring instructions for the Draw, (iv) certify the Draw is consistent with the categories, amounts and timing of the Approved Budget, and (v) certify that all conditions set forth above with respect to the Draws are and will be satisfied as of the date of the request and the date of the Draw.<br><br>    b. <u>Amount</u>. All Draws shall be in an amount not less than **$50,000.00**. |
| Documentation | Any documentation in respect of the DIP Facility (collectively, the "**Documentation**") and all motions relating thereto shall be in form and substance acceptable to the DIP Facility Lender in its sole discretion. Any Documentation shall be consistent with the terms and conditions set forth in the Term Sheet (other than to the extent any additional representations and warranties or covenants are contained in ancillary documentation (including collateral agreements and/or guarantees)). |
| Interest Rates | The principal balance of the DIP Facility (the "**Principal Balance**") shall comprise the aggregate amounts available under the DIP Facility minus any voluntary, mandatory, or other prepayments, other than payments of fees, costs and interest, made to the DIP Facility Lender by or on behalf of the Debtors; *provided* that for that Principal Balance attributable to Filecoin Uses (as defined below), the Principal Balance shall equal the greater of the USD lent under the DIP Facility to acquire Filecoin and the USD equivalent on the Maturity Date of the Filecoin so purchased. Interest shall accrue on the Principal Balance based on the portion of the Principal Balance the Debtors have actually drawn, at a per annum fixed rate of 15.00%; provided that, after the occurrence and during the continuance of an Event of Default, interest shall accrue at the fixed rate of 20.00%. All interest and other fees and costs due hereunder shall be payable on the Maturity Date by wire transfer in the event the Debtors' assets are not sold to the DIP Facility Lender pursuant to a credit bid in a section 363 sale consummated prior to the Maturity Date. All interest |

| | |
|---|---|
| | shall be calculated using a 360-day year and actual days elapsed. |
| Fees | There shall be a three percent (3%) commitment fee, which shall be assessed on the total amount drawn on the DIP Facility and not come due until maturity, and no exit fee for the DIP Facility. |
| | There shall be a Collateral Management Fee of $20,000 per full or partial calendar month payable to one or more designees of Lender that will oversee the inventory, deployment and operation of data networking infrastructure that serves as the Interim DIP Collateral and DIP Collateral (as defined below). |
| Maturity Date | The maturity date ("**Maturity Date**") shall be (unless otherwise extended by the DIP Facility Lender in its sole discretion) the earliest to occur of: (i) August 23, 2023 or such later date as the DIP Facility Lender shall agree in writing in its sole discretion; (ii) the closing date following entry of one or more final orders approving the sale of all or substantially all of the assets belonging to the Debtors in the Chapter 11 Cases, (iii) the acceleration of any outstanding DIP Loans following the occurrence of an uncured Event of Default (as defined herein), or (iv) entry of an order by the Bankruptcy Court in the Chapter 11 Cases either (a) dismissing such case or converting such Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or (b) appointing a Chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of the Debtors (*i.e.*, powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), in each case without the consent of the DIP Facility Lender. All amounts outstanding under the DIP Facility shall be due and payable in full, and the DIP Commitments thereunder shall terminate, on the Maturity Date. |
| Closing Date | As used herein, the term "**Closing Date**" shall mean the date on which each of the conditions specified under the heading "Conditions Precedent to the Closing" below shall have been satisfied (or waived by the DIP Facility Lender in its sole discretion). The Closing Date shall occur as promptly as is practical after the entry of the Interim Order by the Bankruptcy Court. |
| Use of DIP Facility Proceeds | The Debtors shall be permitted to use the proceeds of the DIP Facility to fund (a) the operational, contractor/employee, and other costs of the Debtors, and payments related to the working capital and other general corporate purposes of the Debtors, including the payment of professional fees and expenses; and (b) acquisition of Filecoin to facilitate operations (the "<u>Filecoin Use</u>"), in each and every case of (a) and (b), consistent with, subject to, and within the categories and limitations contained in, the Approved Budget (as defined herein) (the "**Permitted Uses**") and all applicable orders of the Bankruptcy Court in the Chapter 11 Cases. |
| | No portion of the proceeds under the DIP Facility shall be utilized for the payment of professional fees and disbursements incurred in connection with any challenge to (i) the amount, extent, priority, validity, perfection or enforcement of the indebtedness of the Debtors owing to the Prepetition Secured Party[1] (collectively, the "**Prepetition Indebtedness**") or the DIP Facility Lender, or (ii) liens or security interests in the collateral securing such indebtedness, including challenges to the perfection, priority or validity of the liens granted in favor of the Prepetition Secured Party or the DIP Facility Lender with respect thereto. |

---

[1] "**Prepetition Secured Party**" means KB Silver Funding, LLC (or its permitted assignee) in its capacity as the prepetition senior secured lender to the Debtors.

| Approved Budget | "**Approved Budget**" shall mean the rolling consolidated 13-week cash flow and financial projections of the Debtors, and itemizing on a weekly basis all uses, and anticipated uses, of the DIP Facility, cash collateral, revenues or other payments projected to be received, and all expenditures proposed to be made during such period, which shall at all times be in form and substance satisfactory to the DIP Facility Lender in its reasonable discretion, which Approved Budget may be amended only with the consent of the DIP Facility Lender in its reasonable discretion. |
|---|---|
| Permitted Variance | The Debtors shall not make or commit to make any payments other than those identified in the Approved Budget, subject to a cumulative four-week 10% variance from the amount in the "Total Disbursements" line in the Approved Budget. |
| | Subject to the provisions of this Term Sheet, including the subsection entitled "Availability and Draw Procedure", budgeted expenditures and cash receipts may be paid and received, as applicable, in an earlier or later period in the reasonable discretion of the Debtors, in which event, the Approved Budget shall be deemed so amended for the purpose of calculating variances. |
| Reporting | After entry of the Interim Order, the Debtors shall provide to the DIP Facility Lender, no later than 5:00 p.m. Eastern Time on Thursday of each rolling one-week period, a budget variance and reconciliation report setting forth: (i) a comparative reconciliation, on a line-by-line basis, of actual cash receipts and disbursements against the cash receipts and disbursements forecast in the Approved Budget, and (ii) the percentage variance of the aggregate receipts and aggregate disbursements, for (A) the rolling one-week period ended on (and including) the last Saturday of the one-week reporting period and (B) the cumulative period to date and (iii) projections for the following 13 weeks, including a rolling cash receipts and disbursements forecast for such period. |
| Repayment | Except for Mandatory Prepayments (as described below), no payments or prepayments of any Draws under the DIP Facility shall be due until the Maturity Date. Upon the Maturity Date, the unpaid Principal Balance together with all interest, fees, costs, expenses and any other amounts due under the DIP Facility shall be due and payable immediately in full without demand by the DIP Facility Lender or consent or action by the Bankruptcy Court. |
| | The DIP Facility may credit bid the Prepetition Indebtedness and the obligations under the DIP Facility in the "Purchase Price" for the Assets. |
| Voluntary Prepayment | The Debtors may voluntarily prepay the Principal Balance at any time without penalty or premium. |
| Mandatory Prepayments | Except as otherwise provided in the Approved Budget, mandatory repayments of any Draws under the DIP Facility shall be required in an amount equal to (i) 100% of the net sale proceeds from non-ordinary course asset sales of the Collateral (including, without limitation, a sale of all or substantially all of the Debtors' assets), (ii) 100% of the proceeds of the incurrence of any indebtedness other than in the ordinary course of business, (iii) 100% of insurance proceeds received by the Debtors (only in the event that such receipt is an extraordinary receipt that relates to Collateral and exceeds $50,000), and (iv) any condemnation proceeds received by the Debtors. |

4

| | |
|---|---|
| Security / Priority | All amounts owing by the Debtors under the DIP Facility shall be joint and several as to each Debtor and subject to the Carve Out and Permitted Prepetition Liens,[2] (a) will be entitled to superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any or all administrative expense claims of every kind and nature whatsoever, and (b) will be secured by a perfected security interest pursuant to section 364(c)(2), section 364(c)(3) and section 364(d) of the Bankruptcy Code with priority over the security interest securing Debtors' existing secured credit facilities and other indebtedness, including the Debtors' obligations owing to the Prepetition Secured Party and all other parties with liens on the Interim DIP Collateral and the DIP Collateral (defined below), pursuant to section 364(d)(1) of the Bankruptcy Code in all of the assets of the Debtors, as further described in the "DIP Collateral" section below.<br><br>Nothing herein shall be construed as impairing the ability of any party to object to any fees and expenses of a professional in the Chapter 11 Cases.<br><br>All of the liens described herein shall be effective and perfected as of the entry of the Interim Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements. |
| Separate Cash Accounts | The proceeds of the DIP Facility and all other cash from operation of the Debtors during the period in which the DIP Facility is in place shall be maintained in one or more segregated accounts over which the DIP Facility Lender shall have a lien as described above.<br><br>The Debtors shall also enter into an account control agreement promptly with respect to any account as and when directed by the DIP Facility Lender. |
| Collateral | All amounts owing by the Debtors under the DIP Facility in respect thereof, including, without limitation, principal, interest, fees and costs, will be secured by a first priority perfected security interest in and lien on all assets (tangible, intangible, real, personal and mixed) of the Debtors, including, without limitation, any collateral granted in respect of the obligations owed to the Prepetition Secured Party, whether now owned or hereafter acquired, including, without limitation, deposit and other accounts, inventory, equipment, receivables, capital stock or other ownership interest in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks, other general intangibles, and digital currency, but *excluding* any digital currency lent pursuant to loan agreements with Anchorage Lending CA, LLC; CoinList Lend, LLC; DARMA Capital Master Fund, LP; Genesis Global Capital, LLC; and PALLADIUM-Q SEGREGATED PORTFOLIO (collectively, the "<u>Cryptocurrency Loan Agreements</u>") and the amounts due thereunder (such *excluded* collateral, the "<u>Cryptocurrency Collateral</u>"), and all products and proceeds thereof (unless defined as Cryptocurrency Collateral), and subject to entry of the Final Order any proceeds of Avoidance Actions[3] and other causes of action available to or property of the Debtors' bankruptcy estates (collectively, the "**Interim DIP Collateral**"), subject only to the Carve-Out and the Permitted Prepetition Liens.<br><br>Upon entry of (a) a Final Order and (b) an order by United States Bankruptcy Court |

---

[2] "**Carve Out**" and "**Permitted Prepetition Liens**" shall have the meaning ascribed to such term in the Interim Order and Final Order.

[3] "**Avoidance Actions**" means the claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law.

5

|   | for the Southern District of the New York authorizing Genesis Global Holdco, LLC and its affiliated debtors and debtors in possession (collectively, the "**Genesis Debtors**") to grant liens on that digital currency loaned by certain of the Genesis Debtors the Debtors pursuant to the Master Loan Agreement between Genesis Global Capital, LLC ("Genesis") and File Storage Partners, LLC dated August 10, 2021 (the "Genesis Collateral"): the Interim DIP Collateral *plus* the Genesis Collateral (collectively with the Avoidance Actions, the "**DIP Collateral**"), subject only to the Carve-Out and the Permitted Prepetition Liens. |
|---|---|
|   | The DIP Facility Lender shall have a first priority lien as described in the "Security/Priority" section herein on all Interim DIP Collateral and DIP Collateral, senior to all other liens, and junior only to the Carve-Out and the Permitted Prepetition Liens. |
|   | The DIP Facility shall be the joint and several obligation of each Debtor and the DIP Facility Lender may exercise its rights with respect to any asset or grouping of assets, through foreclosure or otherwise. Subject to entry of the Final Order, the Debtors shall waive, and the DIP Orders shall prohibit, marshalling of any of the Collateral or other interest of the DIP Facility Lender or under any similar theory. |
| Guarantee | DLTx, LLC shall guarantee the DIP Facility Obligations |
| Conditions Precedent to Closing | The obligations of the DIP Facility Lender to consummate the transactions contemplated herein and to make the DIP Facility available to the Debtors on a final basis are subject to the satisfaction, in each case in the sole judgment of the DIP Facility Lender, of the following:<br><br>- fEach of the Interim Order or Final Order, as the case may be, shall be in a form that is acceptable to the DIP Facility Lender in its sole discretion.<br><br>- All motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the DIP Facility and the approval thereof shall comply with the terms of this Term Sheet and be in form and substance satisfactory to the DIP Facility Lender in its sole discretion.<br><br>- The Interim Order or the Final Order, as the case may be, shall be in full force and effect, and shall not have been appealed, reversed, modified, amended, stayed for a period of five (5) business days or longer, vacated or subject to a stay pending appeal, in the case of any modification, amendment or stay pending appeal, in a manner, or relating to a matter, that is or may be materially adverse to the interests of the DIP Facility Lender.<br><br>- The DIP Facility Lender shall have received and approved the Approved Budget.<br><br>- Unless otherwise agreed to by the DIP Facility Lender, as to the funding of the Interim Amount, the Debtors shall have taken steps (to the DIP Facility Lender's satisfaction) towards safeguarding the Debtors' assets in the custody of LightEdge Solutions, Inc. ("LightEdge"),[4] including notifying LightEdge of the automatic stay's applicability to the Debtors' assets in its custody, and/or seeking the entry of an order of the Bankruptcy Court (in form and substance acceptable to the DIP Facility Lender) approving any Motion to Enforce the Stay regarding the same. As to the funding of the Final Amount, the Bankruptcy Court shall have entered final orders in form |

---

[4]     Certain of the Debtors' assets are in the custody of LightEdge pursuant to that certain Master Agreement dated as of 2/15/2021 (together with all agreements executed pursuant thereto, the "LightEdge Agreement").

|  | and substance acceptable to the DIP Facility Lender approving the Motion to Enforce the Stay, unless such clause is waived by the DIP Facility Lender or the circumstances giving rise to the Motion to Enforce the Stay are otherwise moot.<br>• There shall be no uncured or unwaived Event of Default.<br>• The representations and warranties of the Debtors relating hereto shall be true and correct immediately prior to, and after giving effect to, funding, as qualified in "Availability and Draw Procedure." |
|---|---|
| Representations / Warranties | <u>See</u> Schedule A and any other representations or warranties set forth in the Term Sheet. |
| Affirmative and Negative Covenants | <u>See</u> Schedule B and any other affirmative or negative covenants set forth in the Term Sheet. |
| Milestones | Unless otherwise extended by the DIP Facility Lender in its sole discretion, the Debtors shall comply with the following milestones for a sale of substantially all of the Debtors' assets to the DIP Facility Lender (a "**Bankruptcy Sale**") in the Chapter 11 Cases (the "**Sale Milestones**"):<br>• Together with their chapter 11 petitions, the Debtors shall have filed a motion seeking approval of the Bankruptcy Sale;<br>• On or before the 40th day after the Petition Date, the Debtors shall have obtained an order from the Bankruptcy Court approving the Bankruptcy Sale; and<br>• On or before the 54th day after the Petition Date, or such later date as the DIP Facility Lender shall agree in writing, the Bankruptcy Sale shall have been consummated. |
| Events of Default | The occurrence of any one or more of the following shall constitute an "**Event of Default**":<br>(i) Failure by the Debtors to pay principal, interest or any other amounts provided by this Term Sheet when due;<br>(ii) Breach by any Debtor of any of the Covenants set forth on Schedule B hereto;<br>(iii) Any representation or warranty made by any Debtor shall prove to have been incorrect in any material respect when made;<br>(iv) Any provision of this Term Sheet or the DIP Orders shall cease to be valid and binding on any Debtor, or any Debtor shall so assert in any pleading filed in any court;<br>(v) The failure to satisfy any of the Sale Milestones;<br>(vi) Without the consent of the DIP Facility Lender, any of the Chapter 11 Cases shall be dismissed or converted to a Chapter 7 case;<br>(vii) Unless consented to by the DIP Facility Lender, a Chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Debtors (*i.e.*, powers beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Chapter 11 Cases;<br>(viii) Any other superpriority claim or lien which is *pari passu* with or senior |

|  |  |
|---|---|
|  | to the claims or liens of the DIP Facility Lender under the DIP Facility shall be granted in any of the Chapter 11 Cases, other than the Carve-Out; |
|  | (ix) Any Debtor shall make any payment on account of any pre-petition indebtedness or payables of a Debtor except as otherwise permitted under the Approved Budget; |
|  | (x) the Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any Debtor which have an aggregate value in excess of $25,000 (other than with respect to those Debtors for which the DIP Facility Lender consents to such relief); |
|  | (xi) An order shall be entered amending, modifying or supplementing the Interim Order or Final Order without the prior written consent of the DIP Facility Lender; |
|  | (xii) Any judgment in excess of $100,000 (to the extent not paid or fully covered (subject to applicable deductibles) by a reputable and solvent insurance company) as to any post-petition obligation shall be rendered against any Debtor and the enforcement thereof shall not be stayed; or there shall be rendered against any Debtor a non-monetary judgment with respect to a post-petition event which is not stayed and causes or would reasonably be expected to have a material adverse effect on the operations, businesses, properties, assets, or conditions (financial or otherwise) of any Debtor, or on the ability of any Debtor to perform its respective obligations herein or under the DIP Orders; |
|  | (xiii) The Debtors revoke the subchapter V designation of the Chapter 11 Cases; |
|  | (xiv) An application for any of the orders described in clauses (vi) through (xiii) above shall be made and such application is not contested by the Debtors in good faith or the relief requested is not withdrawn, dismissed or denied within ten (10) days after filing or the entity obtains a final order under § 506(c) of the Bankruptcy Code against the Lender or obtains a final order adverse to the Lender or any of its rights and remedies under the DIP Documents or in the Interim DIP Collateral or the DIP Collateral; or |
|  | (xv) The filing of a challenge to the liens or claims of the DIP Facility Lender based upon the DIP Facility Lender's prepetition conduct. |
|  | Upon an Event of Default, the DIP Facility Lender shall be entitled to payment of its reasonable attorneys' fees and costs incurred thereafter, which such amounts shall be added to the obligations under the DIP Facility. |
| Relief from Stay Remedies | Upon the occurrence and continuance of an Event of Default beyond the applicable grace period set forth below (if any), the DIP Facility Lender shall be entitled to take all or any of the following actions without further order of or application to the Bankruptcy Court:<br><br>(i) declare the principal of and accrued interest on the outstanding DIP Loans to be immediately due and payable;<br><br>(ii) terminate the DIP Facility; |

|  | (iii) implement the default rate of interest on all outstanding DIP Loans; and |
|---|---|
|  | (iv) take any other action or exercise any other right or remedy (including, without limitation, with respect to the liens in favor of the DIP Facility Lender) permitted under the applicable loan documents, or by applicable law. |
|  | Any automatic stay otherwise applicable to the DIP Facility Lender shall be modified so that upon the occurrence of an Event of Default and upon five (5) business days' prior written notice of such occurrence (a "<u>Termination Notice</u>"), in each case given to the Debtors, counsel to the Committee appointed in these proceedings (if any), and the U.S. Trustee, the DIP Facility Lender shall be entitled to exercise customary remedies including, without limitation, the right to realize on all the Interim DIP Collateral and DIP Collateral and the right to exercise any remedy available under applicable law, in each case without obtaining any further relief or order of the Bankruptcy Court unless, within such five (5) business day period, the Bankruptcy Court has entered an order to the contrary. Consistent with the foregoing sentence, relief from the stay of section 362 of the Bankruptcy Code in favor of the DIP Facility Lender shall be embodied in any order approving the DIP Facility and the use of cash collateral. |
| Governing Law | All documentation in connection with the DIP Facility shall be governed by the laws of the State of Delaware, subject to applicable bankruptcy laws. |

[*Signature Page(s) to Follow*]

IN WITNESS WHEREOF, the parties hereto have executed and agree to be bound by the terms set forth in this Term Sheet or caused the same to be executed by their respective duly authorized officers as of the day and year first above written.

**BORROWERS**:  **FILE STORAGE PARTNERS LLC**

_____

BY:

ITS:

**AFTON BLOCKCHAIN LLC**

_____

BY:

ITS:

**FILTECH SPV LLC**

_____

BY:

ITS:

**MIDWEST BLOCKCHAIN INC.**

_____

BY:

ITS:

**DIP FACILITY LENDER**:  **KB SILVER FUNDING, LLC**

_____

BY:

ITS:

**Schedule A**

**Representations and Warranties**

In order to induce the DIP Facility Lender to enter into this Term Sheet, to make the DIP Facility available to the Debtors, and to advance the Draws, the Debtors, jointly and severally, represent and warrant as of the date hereof, the Closing Date, and the date of each Draw as follows:

1. **Due Organization**. Each of the Debtors are duly formed and/or organized, validly existing and in good standing (to the extent such concept exists in the relevant jurisdiction) under the laws of their jurisdictions of incorporation or formation.

2. **Due Authorization**.

   a. Upon entry of the Interim Order, the execution and delivery of the Term Sheet and the performance by each of the Debtors of such Debtor's obligations under the Term Sheet, any Documentation, or the DIP Orders (i) are within its corporate or limited liability company (or equivalent) powers, (ii) have been duly authorized by all necessary corporate or limited liability company (or equivalent) action of such Debtor, (iii) have received all necessary bankruptcy, insolvency or governmental approvals, (iv) do not contravene or conflict with any provisions of such Debtor's corporate charter or by- laws or limited liability company agreement (or equivalent organizational documents), and (v) do not materially contravene or materially conflict with any provisions of applicable material law or of any material agreements binding upon or applicable to such Debtor or any of its properties;

   b. The Chapter 11 Cases of each Debtor have been duly authorized by all corporate or limited liability company (or equivalent) action of such Debtor.

3. **Binding Obligations**. Upon entry of the Interim Order, this Term Sheet and other Documentation shall constitute the legal, valid and binding obligations, enforceable against each of the Debtors in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally, including the entry of the Interim Order and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4. **Title to Assets**. With respect to its real and personal property, if any, each of the Debtors is the sole owner and has good, valid and marketable title to, or a valid leasehold interest in, all of its respective properties and assets, whether personal or real, subject to no transfer restrictions any kind other.

5. **Existing Indebtedness; Investments, Guarantees and Certain Contracts**. Except as contemplated by the Term Sheet, the Debtors (i) do not have indebtedness secured by any mortgage, pledge, security, lien or conditional sale or other title retention agreement to which any property or asset owned or held by such Debtor is subject except for such Indebtedness that gives rise to the Permitted Liens, or (ii) have not directly or indirectly guaranteed, endorsed (otherwise than for collection or deposit in the ordinary course of business), discounted or sold with recourse or agreed (contingently or otherwise) to purchase or repurchase or otherwise acquire any indebtedness.

6. **Licenses and Permits; Labor**. Each of the Debtors is in compliance with and has all material Permits and Intellectual Property necessary or required by applicable law or governmental authority for the operation of each of the Debtor's businesses.

7. **Disclosure**. To the best of each of the Debtors' knowledge, no written statement furnished by any of the Debtors to the DIP Facility Lender in accordance with the terms of this Term Sheet and other Documentation, when taken as a whole, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not materially misleading in light of all of the circumstances under which they were made.

8. **Perfected Liens**. Upon entry of the Interim Order, the liens granted to the DIP Facility Lender in accordance with the Term Sheet, the Documentation and the Interim Order will at all times be fully perfected liens in and to the Collateral described therein, subject, as to priority, only to liens permitted to have such priority under the Interim Order.

9. **Compliance with Laws**. To the best of each of the Debtor's knowledge, without investigation, such Debtor (i) is in compliance with all laws, statutes, rules, regulations, ordinances and tariffs of any Governmental Authority applicable to each Debtor and/or each Debtor's business, assets or operations, including, without limitation, the Worker Adjustment and Retraining Notification Act or similar state law and ERISA, and (ii) is not in violation of any order of any Governmental Authority or other board or tribunal, except where noncompliance or violation could not reasonably be expected to have a material adverse effect.

10. **Payment of Taxes**. The Debtors have filed (or obtained extensions to file) all federal, state and other tax returns and reports required to be filed, and have paid all federal, state and other taxes, assessments, fees and other governmental charges levied or imposed by a governmental authority upon them or their properties, income or assets otherwise due and payable other than those (i) not yet delinquent or are being contested in good faith by appropriate proceedings, (ii) taxes the nonpayment of which is permitted or required by the Bankruptcy Code, or (iii) taxes allocable to the locations operated by the Debtors for which the Debtors have agreed to pay under any master lease pertaining to such locations or any sub-leases related thereto.

11. **Use of Proceeds**. The proceeds of the DIP Facility received by the Debtors have been and shall be used exclusively in accordance with the terms set forth in the Term Sheet under the heading "Use of DIP Proceeds".

# Schedule B

## Affirmative, Negative and Financial Covenants

Each of the Debtors covenants and agrees that, until all borrowings under the DIP Facility are paid in full and the commitments thereunder are terminated:

1. **Inspection**. Upon reasonable request of the DIP Facility Lender, the Debtors will permit any officer, employee, attorney or accountant or agent of the DIP Facility Lender to audit, review, make extracts from or copy, at the Debtors' expense, any and all corporate and financial and other books and records of the Debtors during ordinary business hours and, in the absence of an Event of Default, upon reasonable advance notice and to discuss the Debtors' affairs with any of their directors, officers, employees, attorneys, or accountants. Upon reasonable request of the DIP Facility Lender, the Debtors will permit the DIP Facility Lender, or any of its officers, employees, accountants, attorneys or agents, to examine and inspect any Interim DIP Collateral or DIP Collateral or any other property of the Debtors at any time during ordinary business hours and, in the absence of an Event of Default, upon reasonable prior notice.

2. **Maintenance of Properties**. Each the Debtors will keep and maintain the Collateral and all of its other properties necessary or useful in its business in good condition, repair and working order (normal wear and tear excepted) other than to the extent contemplated by the Approved Budget or the DIP Orders.

3. **Insurance**. The insurance coverage maintained by LightEdge Solutions, Inc. for the benefit of each Debtor in connection with the LightEdge Agreement will remain in place with respect to the Interim DIP Collateral and the DIP Collateral to the extent of the Certificate of Insurance delivered in connection with the LightEdge Agreement.

4. **Use of Proceeds**. The Debtors shall use the proceeds from the DIP Facility only for the purposes set forth under the heading "Use of Proceeds" in the Term Sheet and in accordance with the Approved Budget.

5. **Further Assurances; Post Closing**. At the Debtors' cost and expense, each of the Debtors shall take such further actions, obtain such consents and approvals and duly execute and deliver such further agreements, assignments, instructions or documents as DIP Facility Lender may reasonably request with respect to the purposes, terms and conditions of the Term Sheet and the consummation of the transactions contemplated thereby.

6. **Financial Reporting and Other Information**. Each of the Debtors shall (i) file with the Bankruptcy Court and furnish to DIP Facility Lender all operational and other reports as and when required by the Bankruptcy Code and Bankruptcy Rules, (ii) comply with the reporting requirements set forth under the heading "Reporting" in the Term Sheet, (iii) provide access to the DIP Facility Lender for information (including historical information), including, without limitation, regularly scheduled meetings with the Debtors and their advisors; and (iv) provide such additional information, documents, statements, reports and other materials as DIP Facility Lender may reasonably request from a credit or security perspective or otherwise from time to time.

7. **Payment of Obligations and Indebtedness**.

    a. The Debtors shall satisfy in full all of their obligations under the Term Sheet, any Documentation, or the DIP Orders by or on by the Maturity Date.

    b. Except as otherwise prescribed in the Term Sheet, or to the extent excused pursuant to the Bankruptcy Code, each of the Debtors shall pay, discharge or otherwise satisfy to the extent provided in the Approved Budget at or before the Maturity Date (subject to applicable grace

periods and, in the case of trade payables, to ordinary course payment practices) all of their material obligations and liabilities, except when the amount or validity thereof is being contested in good faith by appropriate proceedings, and such reserves as DIP Facility Lender may deem proper and necessary in its reasonable discretion shall have been made.

        8. **Compliance with Sale Milestones**. Unless otherwise extended by the DIP Facility Lender in its sole discretion, the Debtors shall comply with Sale Milestones set forth under the heading "Sale Milestones" in the Term Sheet.

        9. **Bankruptcy Pleadings**. The Debtors shall deliver to the DIP Facility Lender as soon as practicable in advance of filing with the Bankruptcy Court the Interim Order and the Final Order (which must be in form and substance reasonably satisfactory to the DIP Facility Lender), all other proposed orders and pleadings related to the DIP Facility (which must be in form and substance reasonably satisfactory to the DIP Facility Lender), the Quantum Meruit Motion(s), all "fist day pleadings" and proposed orders relating thereto, the motion, proposed order and/or pleadings related to the Bankruptcy Sale, any plan of reorganization or liquidation, and/or any disclosure statement related to such plan.