# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FILE STORAGE PARTNERS, LLC, *et al.*,[1] | Case No. 23-10877 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 5, 25, 43, 84** |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; AND (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTY, GENESIS GLOBAL CAPITAL, LLC AND <u>DIP FACILITY LENDER</u>**

Upon consideration of the *Motion of the Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to § 364 of the Bankruptcy Code; (II) Authorizing Use of Cash Collateral Pursuant to § 363 of the Bankruptcy Code; (III) Granting Liens and Super-Priority Claims; (IV) Granting Adequate Protection to the Prepetition Secured Party; and (V) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. R. 4001(b) and (c)* [D.I. 5] (the "<u>Motion</u>")[2] filed by the Debtors; and this Court having entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to § 364 of the Bankruptcy Code; (II) Authorizing Use of Cash Collateral Pursuant to §*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: File Storage Partners, LLC (6920); Afton Blockchain LLC (3951); Filtech SPV LLC (9602); and Midwest Blockchain Inc. (8842). The Debtors' service address is 1357 Ashford Ave., Pmb 373, San Juan, PR 00907.
[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

*363 of the Bankruptcy Code; (III) Granting Liens and Super-Priority Claims; (IV) Granting Adequate Protection to the Prepetition Secured Party; and (V) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. R. 4001(b) and (c)* [D.I. 25] (the "<u>First Interim Order</u>") and the *Second Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to § 364 of the Bankruptcy Code; (II) Authorizing Use of Cash Collateral Pursuant to § 363 of the Bankruptcy Code; (III) Granting Liens and Super-Priority Claims; and (IV) Granting Adequate Protection to the Prepetition Secured Party* [D.I. 43] (the "<u>Second Interim Order</u>"); and it appearing that due and proper notice of the Motion has been given, and that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES**:

A.      On June 30, 2023 (the "<u>Petition Date</u>"), the Debtors commenced the Cases in the Bankruptcy Court.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  A Subchapter V Trustee was appointed on July 5, 2023.

B.      On or about the same date as the filing of the Motion, the Debtors: (i) filed a motion seeking joint administration of the Chapter 11 Cases; and (ii) filed a motion seeking an order approving the sale of substantially all their assets (the "<u>Sale Motion</u>").

C.      The Bankruptcy Court entered the First Interim Order on July 6, 2023 and the Second Interim Order on July 24, 2023.

D.      The Bankruptcy Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.        Debtors' Stipulations: Subject to Paragraph 14 hereof, each stipulation, admission, and agreement contained in this Final Order, including, without limitation, the stipulations set forth below (collectively, the "Debtors' Stipulations"), shall be binding upon the Debtors, their estates, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes.  The Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows:

(a)        Prepetition, certain of the Debtors had entered into five separate loan agreements with lenders that lent certain crypto currencies to the Debtors (collectively, the "Cryptocurrency Loan Agreements"), and then retained liens on those lent cryptocurrencies to secure the loan thereof (collectively, the "Cryptocurrency Collateral").[3]  One of those lenders is a debtor in its own chapter 11 case: Genesis Global Capital, LLC ("Genesis") pending in the United States Bankruptcy Court for the Southern District of New York.

(b)        On August 9, 2021, Genesis and File Storage Partners, LLC ("FSP") entered into that certain Master Loan Agreement dated as of August 9, 2021 (the "Genesis MLA").  On April 10, 2021, Genesis and FSP entered into that certain loan term sheet (the "Genesis Term Sheet"), and the first amendment to the Genesis Term Sheet dated December 10, 2021 (the "Genesis Term Sheet Amendment"), pursuant to which, among other things, Genesis lent FSP native token ("FIL") of the Filecoin Network not to exceed 500,000 FIL (the Genesis MLA, the Genesis Term Sheet, and the Genesis Term Sheet Amendment, the "Genesis Loan Documents").

---

[3] For the avoidance of doubt, the Prepetition Collateral does not include the cryptocurrency owed to the lenders in connection with the Cryptocurrency Loan Agreements.

(c)     As of the Petition Date, the Debtors were, absolutely and unconditionally, indebted and obligated to Genesis under the Genesis Loan Documents in an aggregate principal amount of approximately 176,415 FIL, plus accrued but unpaid interest, fees, costs, and expenses incurred by Genesis under the Genesis Loan Documents (all amounts owing or outstanding under the Genesis Loan Documents, whether or not contingent, the "Genesis Secured Obligations").

(d)     As more fully set forth in the Genesis Loan Documents, the Genesis Secured Obligations are secured by a first priority lien on and security interest in the "Collateral" under and as defined in the Genesis MLA (such liens and security interests, collectively, the "Genesis Liens," and the collateral securing the Genesis Liens, the "Genesis Collateral").

(e)     On June 8, 2023, Silvermine Capital Advisors, LLC (the "Prepetition Secured Party") made a loan to the Debtors and certain of their affiliates in the original principal amount of thirty thousand and 00/100 dollars ($30,000), as evidenced by that certain Promissory Note, dated June 8, 2023 by the borrowers thereto in favor of the Prepetition Secured Party (as amended from time to time, the "Note"), and as secured by that certain Security Agreement, dated June 8, 2023, by the grantors signatory thereto in favor of Prepetition Secured Lender (together with any and all amendments, restatements, supplements, and other modifications thereto, collectively, the "Security Agreement," and together with the Note, the "Prepetition Debt Documents").  The collateral described in the Security Agreement (as subsequently amended) comprised all assets of the Debtors *other than* the Cryptocurrency Collateral, but including all other digital currency collateral (such collateral, the "Prepetition Collateral").  The security interests evidenced under the Security Agreement (as amended over time, the "Prepetition Liens") were perfected by the filing of a financing statement with the Secretaries of State for Delaware, Nebraska, Missouri and Puerto Rico.

(f)        On June 29, 2023, Silvermine assigned the Note (with the consent of the Borrowers thereunder) and its rights under the Security Agreement to KB Silver Funding, LLC (the "Prepetition Secured Party").  The Prepetition Secured Party then filed financing statements evidencing the assignment of the Note and the Security Agreement against each of the borrowers under the Note with the appropriate Secretaries of State, including those of Delaware, Nebraska, Missouri and Puerto Rico.  On the same day, the Debtors amended and restated the Note by executing the First Amended and Restated Promissory Note in the amended principal amount of two hundred thousand and 00/100 dollars ($200,000.00).

(g)        As of the Petition Date, the Debtors were, absolutely and unconditionally, indebted and obligated to Prepetition Secured Party under the Prepetition Debt Documents in a principal amount of approximately $200,000.00, plus accrued but unpaid interest, fees, costs and expenses incurred by the Prepetition Secured Party under the Prepetition Debt Documents (all amounts owing or outstanding under the Prepetition Debt Documents, whether or not contingent, the "Prepetition Obligations").

(h)        As of the Petition Date and immediately prior to giving effect to the First Interim Order, the Prepetition Credit Documents and the Genesis Loan Documents are valid and binding agreements and obligations of the Debtors, and the liens granted pursuant thereto as to the Debtors constitute valid, binding, enforceable, and perfected security interests and liens, subject only to the liens permitted under such agreements, but only to the extent such permitted liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment, or subordination (whether equitable, contractual, or otherwise) pursuant to the Bankruptcy Code

or applicable non-bankruptcy law; and the obligations arising under the Prepetition Credit Documents and the Genesis Loan Documents constitute the legal, valid, and binding obligation of the Debtors, enforceable in accordance with the terms thereof, and are not subject to any challenge or defense, including without limitation, avoidance, subordination (whether equitable, contractual, or otherwise), recharacterization, recovery, setoff, offset, attach, counterclaim, cross-claim, or claim (as defined in the Bankruptcy Code) of any kind.

(i)     The Debtors have waived, discharged, and released any right they may have to (i) challenge or contest any of the Prepetition Obligations, the Prepetition Credit Documents, the Genesis Secured Obligations, the Genesis Loan Documents, the Genesis Liens, the Genesis Collateral, the DIP Obligations, the DIP Facility Documents (as defined below), and the liens, interests, claims, and security for the Prepetition Obligations and the DIP Obligations, and to (ii) assert any offsets, defenses, claims, objections, challenges, and/or causes of action against the Prepetition Secured Party, DIP Facility Lender, Genesis, and/or any of each of its affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors, and employees only to the extent any such offset, defenses, claims, objections, challenges, and/or causes of action against any such parties is related to the Prepetition Obligations, the DIP Obligations, or the Genesis Secured Obligations, and to assert that any portion of the Prepetition Obligations, the DIP Obligations, or the Genesis Secured Obligations (as applicable) is subject to avoidance, disallowance, reduction, or subordination (whether equitable, contractual, or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(j)     No offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens, the Prepetition Secured Obligations, the Genesis Liens, the Genesis Secured Obligations, the Genesis Loan Documents, the Genesis Collateral, the

DIP Facility Liens, or the DIP Obligations exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim, or counterclaim of any kind or nature to any of the Prepetition Liens, Prepetition Secured Obligations, the Genesis Liens, the Genesis Secured Obligations, the Genesis Loan Documents, the Genesis Collateral, DIP Facility Liens, or DIP Obligations exist, and no portion of the Prepetition Liens, Prepetition Secured Obligations, the Genesis Liens, the Genesis Secured Obligations, the Genesis Loan Documents, the Genesis Collateral, DIP Facility Liens, or DIP Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable, contractual, or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law or equity.

(k)     The Debtors, on behalf of themselves and their respective estates (including any successor trustee or other estate representative in the Chapter 11 Cases and any Successor Cases (as defined herein), and any party acting by, through, or under the Debtors or their estates), hereby stipulate and agree that they absolutely and unconditionally release and forever and irrevocably discharge and acquit the Prepetition Secured Party, Genesis, the DIP Facility Lender, and each of their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and the respective successors and assigns thereof, in each case solely in their capacity as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known,

unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Facility Documents, the Prepetition Credit Documents, the Genesis Loan Documents (as applicable), and/or the transactions contemplated hereunder or thereunder including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Prepetition Secured Party, the Genesis Debtors, and/or the DIP Facility Lender (collectively, the "Released Claims") that exist or may exist prior to the entry of this Final Order by the Court. The Debtors further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations, the Genesis Secured Obligations, and the DIP Obligations which the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the entry of this Final Order by the Court.

(l)     The Debtors admit, stipulate, acknowledge, and agree that the DIP Facility Lender and the Prepetition Secured Party shall have the right, subject to section 363(k) of the Bankruptcy Code, to credit bid up to the full amount of the applicable outstanding Prepetition Secured Obligations and/or the DIP Obligations (as applicable), including, without limitation, any accrued interest and expenses, in a sale of any DIP Collateral (defined below) or Prepetition Collateral, as applicable, and whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(m)     All of the Debtors' cash and cash equivalents, including cash on deposit in any account or accounts as of the Petition Date, securities or other property, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Secured Party and DIP Facility Lender.

F.     The Debtors' budget (annexed to the Second Interim Order as **Exhibit A**, the "Budget") indicates that the Debtors will require the use of Cash Collateral and the DIP Facility to meet the Debtors' expenses in connection with their business operations and to pay certain expenses related to the Debtors' Chapter 11 Cases.

G.     The Prepetition Secured Party is entitled, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date.

H.     Genesis is entitled, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, to adequate protection of its interests in the Genesis Collateral to the extent of any diminution in the value of the Genesis Collateral occurring from and after the Petition Date, whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the DIP Facility, the priming of the liens arising under the Genesis Loan Documents, the use of Cash Collateral, the physical deterioration, consumption, use, sale, lease, disposition, or shrinkage, of the Genesis Collateral, the imposition of the automatic stay, or otherwise (including, without limitation, any diminution in value of such interests in the Genesis Collateral prior to Genesis's seeking vacation of the automatic stay or the Bankruptcy Court granting such relief).

I.     The Debtors' businesses have an immediate need to obtain the DIP Facility and use Cash Collateral in order to have adequate liquidity to provide for, among other things, the orderly

continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, and to satisfy other working capital, operational, financial and general corporate needs, as well as to pursue the orderly sale of its assets through these Chapter 11 Cases.

J.        Under the circumstances, the Debtors are unable to obtain sufficient financing from sources other than the DIP Facility Lender on terms more favorable than under the DIP Facility and all the documents, exhibits, schedules, and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Term Sheet attached to the First Interim Order as **Exhibit B** and the Budget, the "DIP Facility Documents").

K.        Each of the DIP Facility Lender, Genesis, and the Prepetition Secured Party have acted in good faith in, as applicable, negotiating, consenting to, and agreeing to provide the postpetition financing arrangements and use of Cash Collateral contemplated by this Final Order and the other DIP Facility Documents, and the reliance of each of the DIP Facility Lender, Genesis, and the Prepetition Secured Party on the assurances referred to above is in good faith.

L.        Notice of the Motion and the relief requested thereby and this Final Order has been provided in accordance with Bankruptcy Rule 4001, upon (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors or their counsel, (c) counsel to the DIP Facility Lender and the Prepetition Secured Party, (d) all known holders of filed liens on the Debtors' assets, (e) the Subchapter V Trustee, (f) counsel to Genesis, and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

M.        Absent entry of this Final Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.

N.      Based on the record presented by the Debtors to the Bankruptcy Court at the Interim Hearing and Final Hearing, and in the First Day Declaration, *Supplemental Declaration of Timothy Furey, Chief Restructuring Officer of the Debtors, in Support of the Debtors' First Day Motions* [D.I. 18], and *Supplemental Declaration of Timothy Furey, Chief Restructuring Officer of the Debtors, in Support of the Debtors' DIP Motion and Reply to Objection of Ad Hoc Noteholder Group to Entry of the Final DIP Order* [D.I. 63]: (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors and the DIP Facility Lender, Genesis, and the Prepetition Secured Party, and any credit extended, loans made, credit support provided and other financial accommodations extended to the Debtors by the DIP Facility Lender and use of Cash Collateral by the Debtors shall be deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

**THEREFORE**, it is hereby **ORDERED**, **ADJUDGED**, AND **DECREED** that:

1.      <u>Disposition</u>.  The Motion is granted, as set forth herein.  The Debtors are authorized to use Cash Collateral and borrow under the DIP Facility pursuant to the Budget, the DIP Term Sheet, and this Final Order.  Any objections to the Motion that have not previously been resolved or withdrawn are hereby overruled.  This Final Order shall immediately become effective upon its entry.

**B.      <u>Authorization to Borrow and Rights of DIP Facility Lender.</u>**

2.      <u>Authorization to Borrow</u>.  Provided that the Debtors are not in default under the terms of this Final Order or the DIP Term Sheet, the Debtors are authorized to borrow under the

DIP Facility from the DIP Facility Lender up to the principal amount of $1,500,000.00 (together with interest, fees, charges and expenses payable under the DIP Facility Documents), pursuant and subject to the terms and conditions of this Final Order and the DIP Term Sheet (including the conditions to effectiveness thereof). The DIP Facility Documents shall constitute legal, valid, and binding obligations of the parties thereto, enforceable against the Debtors in accordance with their terms.

3.      <u>Structure and Amount of DIP Facility</u>. The DIP Facility in the maximum principal amount of **<u>$1,500,000.00</u>** shall comprise senior secured term loan credit facilities, as set forth in the DIP Term Sheet. The DIP Facility Lender is relying upon the Debtors' compliance with the Budget in accordance with this Final Order and the DIP Facility Documents in determining to enter into the postpetition financing arrangements provided for herein.

4.      <u>Continuation of Liens Securing DIP Obligations</u>. Until payment in full, in cash (unless otherwise released as part of any credit bid for the assets of the Debtors), of all of the DIP Obligations and termination of the DIP Facility Lender's commitments under the DIP Facility, all liens and security interests of the DIP Facility Lender shall remain valid and enforceable with the same continuing priority as described herein.

5.      <u>DIP Loans</u>. All loans made to or for the benefit of the Debtors on or after the Petition Date under the DIP Facility Documents (collectively, the "<u>DIP Loans</u>"), which include, without limitation, principal, interest, fees, costs, expenses, indemnification obligations and other obligations and amounts due from time to time by the Debtors to the DIP Facility Lender under the DIP Facility Documents and this Final Order, shall hereinafter be referred to as the "<u>DIP Obligations</u>."

6.      DIP Collateral.  All amounts owing by the Debtors under the DIP Facility in respect thereof, including, without limitation, principal, interest, fees and costs, will be secured by a first priority perfected security interest in and lien on the Interim DIP Collateral (as defined in the First Interim Order) and, subject to entry of an order in the chapter 11 cases of Genesis Global Holdco, LLC and its affiliated debtors and debtors in possession (collectively, the "Genesis Debtors"), pending in the United States Bankruptcy Court for the Southern District of the New York, Case No. 23-10063 (Jointly Administered) (the "Genesis Chapter 11 Cases") authorizing the priming liens on the Genesis Collateral (collectively with the Avoidance Actions and the Interim DIP Collateral, the "DIP Collateral"), pursuant to and in accordance with this Final Order, subject only to the Carve-Out and the Prepetition Permitted Liens (defined below).  The Debtors waive, and this Final Order prohibits, marshalling of any of the DIP Collateral or other interest of the DIP Facility Lender under any similar theory.

7.      DIP Facility Liens.  As security for the repayment of the DIP Obligations, pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, the DIP Facility Lender is hereby granted valid, binding, continuing, enforceable, fully perfected, and unavoidable first-priority senior priming security interests and liens (collectively, the "DIP Facility Liens") on and in the DIP Collateral and all proceeds thereof, which liens are valid, binding, enforceable, and fully perfected as of the date hereof, not subject to subordination, impairment, or avoidance, for all purposes in the Chapter 11 Cases and any successor case.  The DIP Facility Liens granted herein shall be valid, perfected and non-avoidable, first priority liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors, including the proceeds of Avoidance Actions,[4] and shall be senior to all other liens and claims except the Carve-Out and the

---

[4] "Avoidance Actions" shall mean the claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent

Prepetition Permitted Liens,[5] to the extent such liens and security interests are valid, perfected, enforceable and nonavoidable (provided, that with respect to such excepted liens and security interests, if any, the DIP Facility Lender shall be granted second priority liens).

8.      <u>Indemnification</u>.  The Debtors shall be authorized to indemnify the DIP Facility Lender against any liability arising in connection with the DIP Term Sheet, to the maximum extent permitted under the Bankruptcy Code and applicable law.  All such unpaid fees, expenses and indemnities of the DIP Facility Lender, to the extent permitted by law, shall constitute DIP Obligations, and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Final Order and the DIP Term Sheet.  For the avoidance of doubt, the Debtors will not provide indemnification for bad faith, breach of fiduciary duty, gross negligence, willful misconduct, or fraud.

9.      <u>DIP Facility Superpriority Liens</u>.  For all of the DIP Obligations arising under the DIP Facility and the DIP Facility Documents, the DIP Facility Lender is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out and the Prepetition Permitted Liens, the allowed DIP Facility Superpriority Claim, which claim shall be payable from and have recourse to the DIP Collateral.  The DIP Facility Superpriority Claim shall be deemed a legal, valid, binding, enforceable and perfected claim, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any successor case.

10.     <u>Carve-Out</u>.

---

Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law.
[5] "<u>Prepetition Permitted Liens</u>" shall mean those certain liens senior by operation of law or otherwise permitted by the Prepetition Credit Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the liens securing the Prepetition Obligations as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code), including any valid, perfected, unavoidable liens and security interests on any of the Debtors' assets in favor of LightEdge Solutions, Inc. or any affiliate or subsidiary thereof ("<u>LightEdge</u>").

(a)  Subject to the terms and conditions contained in this Final Order, the DIP Facility Liens, DIP Facility Superpriority Claim, the adequate protection liens and claims of the Prepetition Secured Party and Genesis as provided for herein, and the liens and claims held by the Prepetition Secured Party and Genesis, shall be subject and subordinate only to the Prepetition Permitted Liens and the following (the "Carve-Out"): (i) the statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, which shall not be limited by any budget; (ii) allowed reasonable fees and expenses (the "Professional Fees") of attorneys, financial advisors, and other professionals (including any claims agent) employed by the Debtors in the Chapter 11 Cases pursuant to a Court order under section 327 and 328 of the Bankruptcy Code, including a Subchapter V Trustee (collectively, the "Professionals"), to the extent incurred at any time on or prior to the calendar day on which a Termination Date (defined below) occurs less any retainers held by such Professional as of such date), whether such Professional Fees have been allowed by the Bankruptcy Court before or after the Termination Date; and (iii) Professional Fees of Professionals incurred subsequent to the calendar day immediately following the Termination Date in an aggregate amount not to exceed **$10,000**.  The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, the DIP Facility Lender, Genesis, the Prepetition Secured Party, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.  Payment of any portion of the Carve-Out shall not, and shall not be deemed to: (i) reduce any Debtors' obligations owed to any of the DIP Facility Lender, Genesis, or the Prepetition Secured Party, or (ii) subordinate, modify, alter, or otherwise affect any of the liens and security interests of such parties in the DIP Collateral, the Prepetition Collateral, or the Genesis Collateral (or their respective claims against the Debtors).  The DIP Facility Lender reserves the

right to review and object to any fee statement, interim application or monthly application issued or filed by any Professional. Notwithstanding any provision (including, without limitation, any "variance" or similar provision) of this Final Order or the DIP Facility Documents to the contrary, the aggregate cumulative expenditures from Cash Collateral and from the proceeds of the DIP Facility subject to the Carve-Out for the Professionals shall not exceed 100% of the amount with respect thereto set forth in the Budget, and Professional Fees for any Professional included in the Carve-Out shall not exceed 100% of the amount listed in the line item in the Budget for such Professional. The payments to the Subchapter V Trustee reflected on the Budget will be deemed held in escrow pending the Court's approval of the Subchapter V Trustee's fees and expenses or upon further order of the Court, and any unearned portion of such budgeted amounts shall be remitted to the Debtors' estates to be distributed in accordance with this Order and the DIP Facility Documents or other order of the Court.

(b)    No Prepetition Collateral, Genesis Collateral, DIP Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out or financing provided under the DIP Facility, shall include, apply to, or be available for any fees or expenses incurred by any party, including the Professionals, in connection with: (i) the investigation, initiation, or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Facility Lender, the Genesis Debtors or the Prepetition Secured Party, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization or enforceability of, or asserting any defense, counterclaim or offset to, the DIP Obligations, DIP Facility Liens, the DIP Facility Superpriority Claim, in respect thereof, the Prepetition Credit Agreements, the Prepetition Obligations, the Genesis Loan Documents, the Genesis Secured Obligations, the Genesis Liens, or the Genesis Collateral, (ii) asserting any claims or causes of action (including,

without limitation, claims or actions to hinder or delay the DIP Facility Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Facility Documents or this Final Order or any Avoidance Actions) against the DIP Facility Lender, the Genesis Debtors, or Prepetition Secured Party, or (iii) incurring indebtedness other than as expressly permitted by the DIP Facility Documents.

11. <u>Restrictions on the Debtors</u>. Other than the Carve-Out and Prepetition Permitted Liens, no claim or lien having a priority superior or pari passu with those granted by this Final Order to the DIP Facility Lender shall be granted by any Debtor while any portion of the DIP Facility (or refinancing thereof) or any commitment thereunder, including the DIP Obligations, remains outstanding.

**C.** **<u>Authorization to Use Cash Collateral and Rights of Prepetition Secured Party and Genesis</u>**

12. <u>Use of Cash Collateral; Adequate Protection</u>. Subject to the terms and conditions of this Final Order, the DIP Facility, the DIP Facility Documents, and the Budget, the Debtors are authorized to use Cash Collateral. As additional consideration for their consent to use of Cash Collateral and the priming of certain of the Prepetition Secured Party's liens, claims, and interests in the Prepetition Collateral (solely as set forth in this Final Order), the Prepetition Secured Party shall receive the following (collectively, the "<u>Prepetition Adequate Protection</u>"):

(a) The Prepetition Secured Party shall have and is granted continuing and enforceable liens in accordance with section 552(b) of the Bankruptcy Code on the Prepetition Collateral (including, without limitation, proceeds of Prepetition Collateral as exist or arise after the Petition Date) and as adequate protection, replacement liens on the Prepetition Collateral, the DIP Collateral, and any and all assets of the Debtors as exist on or after the Petition Date (including, without limitation, proceeds of Prepetition Collateral as exist or arise after the Petition

Date) in the same priority and validity as existed on the Petition Date (the "Prepetition Secured Party Adequate Protection Liens") to the extent there is any diminution in the value of such Prepetition Secured Party's interests in the Prepetition Collateral or Cash Collateral during the pendency of these Cases, whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the DIP Facility, the priming of the liens arising under the Prepetition Credit Documents, the use of Cash Collateral, the physical deterioration, consumption, use, sale, lease, disposition, shrinkage or decline in market value of the Prepetition Collateral, the imposition of the automatic stay, or otherwise (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition Secured Party seeking vacation of the automatic stay or the Bankruptcy Court granting such relief). The Prepetition Secured Party Adequate Protection Liens shall be (x) junior in priority and subordinate only to: (i) the Prepetition Permitted Liens, (ii) the DIP Facility Liens, and (iii) the Carve-Out, and (y) senior to any other liens in the DIP Collateral other than the Genesis Collateral. The Adequate Protection Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtors, the Prepetition Secured Party of security agreements, pledge agreements, financing statements or other agreements. The Prepetition Secured Party Adequate Protection Liens shall cover assets, interests and proceeds of the Debtors that are or would be collateral under the Prepetition Credit Documents, and all cash and cash equivalents, and all assets, interests and proceeds of the Debtors that constitute DIP Collateral.

(b) **Prepetition Secured Party Administrative Claim**. The Prepetition Secured Party is hereby granted in each of the Debtors' Chapter 11 Cases an allowed administrative claim (the "Prepetition Secured Party Adequate Protection Claim") under section 507(b) of the Bankruptcy Code in an amount equal to the diminution in the value of the Prepetition Secured

Party's interests in the Prepetition Collateral from and after the Petition Date, and such Adequate Protection Claim shall be junior in priority and subordinate only to: (i) the DIP Superpriority Claims, (ii) the Carve-Out, and (iii) the Prepetition Permitted Liens. The Adequate Protection Claim shall have recourse to and be payable from the DIP Collateral and all proceeds thereof.

(c)  <u>Restrictions on Use of Cash Collateral</u>.  Except as set forth in Paragraph 10(b), no Prepetition Collateral, DIP Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out or financing provided under the DIP Facility shall include, apply to, or be available for any fees or expenses incurred by any party, including the Professionals, in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition Secured Party or DIP Facility Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, the Prepetition Obligations, DIP Obligations, or the Adequate Protection Liens granted herein.

(d)  <u>Use of Genesis Collateral; Adequate Protection</u>. Genesis shall have and is granted continuing and enforceable liens in accordance with section 552(b) of the Bankruptcy Code on the Genesis Collateral (including, without limitation, proceeds of Genesis Collateral as exist or arise after the Petition Date) and as adequate protection, replacement liens on the Genesis Collateral in the same priority and validity as existed on the Petition Date (the "<u>Genesis Adequate Protection Liens</u>") to the extent there is any diminution in the value of Genesis's interests in the Genesis Collateral during the pendency of these Cases, whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the DIP Facility, the priming of the liens arising under the Genesis Loan Documents, the use of Cash Collateral, the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of

the Genesis Collateral, the imposition of the automatic stay, or otherwise (including, without limitation, any diminution in value of such interests in the Genesis Collateral prior to Genesis's seeking vacation of the automatic stay or the Bankruptcy Court granting such relief). The Genesis Adequate Protection Liens shall be junior in priority and subordinate only to: (i) the Prepetition Permitted Liens, (ii) the DIP Facility Liens, and (iii) the Carve-Out. The Genesis Adequate Protection Liens are valid, binding, enforceable, and fully perfected as of the Petition Date without the necessity of the execution, filing, or recording by the Debtors or Genesis of security agreements, pledge agreements, financing statements, or other agreements. The Genesis Adequate Protection Liens shall cover assets, interests, and proceeds of the Debtors that are or would be Collateral under the Genesis Loan Documents.

(e)    Genesis Administrative Claim. Genesis is hereby granted in each of the Debtors' Chapter 11 Cases an allowed administrative claim (the "Genesis Adequate Protection Claim") under section 507(b) of the Bankruptcy Code in an amount equal to the diminution in the value of the Genesis's interests in the Prepetition Collateral from and after the Petition Date, and such Genesis Adequate Protection Claim shall be junior in priority and subordinate only to: (i) the DIP Superpriority Claims, (ii) the Carve-Out, and (iii) the Prepetition Permitted Liens. The Genesis Adequate Protection Claim shall have recourse to and be payable from the DIP Collateral and all proceeds thereof.

(f)    Genesis Legal Fees and Expenses. As additional adequate protection, the Debtors shall pay all reasonable and documented outstanding fees and out-of-pocket expenses (the "Genesis Adequate Protection Fee Payments"), including, but not limited to, reasonable and documented fees and out-of-pocket expenses of legal counsel, incurred prior to or after the Petition Date, provided that the Genesis Adequate Protection Fee Payments shall have been incurred on

account of the Genesis Secured Obligations and that the aggregate amount of Genesis Adequate Protection Fee Payments paid by the Debtors will not exceed $20,000.00 and provided further that Genesis shall send a summary invoice of such fees and expenses to the Debtors and their counsel, the U.S. Trustee, and Subchapter V Trustee. Within seven (7) days after delivery of such invoices in accordance with this paragraph, the Debtors shall pay such Genesis Adequate Protection Fee Payments; provided, however, that to the extent an objection has been raised to certain fees and costs within such seven (7) days, the Debtors shall pay only such fees and costs to which no objection has been raised. To the extent there is an objection with respect to any such costs and fees that is not resolved consensually, the Court may resolve the objection. No professional to Genesis shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Subject to the notice and response provisions set forth in this paragraph, the Genesis Adequate Protection Fee Payments are hereby approved.

(g)        As additional adequate protection, (i) Genesis shall be entitled to cash payments on the last day of each month, which payments shall each be in the amount calculated as (A) the amount of the Genesis Secured Obligations as of the Petition Date multiplied by (B) a rate of 13% per annum (computed on the basis of a 360-day year of twelve 30-day months); (ii) an allowed administrative expense claim accruing at a rate of 13% of the outstanding amount of Genesis Secured Obligations; (iii) the Debtors shall maintain any insurance policies that were applicable to the Genesis Collateral as of the Petition Date; (iv) following the occurrence of an Event of Default (as defined below), prior to seeking payment of any DIP Obligations from the Genesis Collateral, the DIP Lender shall first satisfy the DIP Obligations from DIP Collateral other than the Genesis Collateral; and (v) Genesis shall be entitled to the additional benefits set forth in

this Final Order, including in paragraphs 14 (Binding Effect on Non-Debtor Third Parties) and 26 (Use of DIP Facility Proceeds) hereof.

(h)     Consent to Genesis's Priming and Adequate Protection. Genesis consents to the priming of the Genesis Liens by the DIP Facility Liens provided for herein; provided, however, that such consent to the priming and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Final Order relating to the DIP Facility Documents and DIP Term Sheet set forth herein, and such consent shall not be deemed to extend to any replacement or other debtor-in-possession financing other than under the DIP Facility Documents; provided, further, that such consent shall be of no force and effect in the event this Final Order is not entered and the DIP Facility Documents as set forth herein are not approved; provided, further, that such consent shall be of no force and effect if the United States Bankruptcy Court for the Southern District of New York overseeing the Genesis Chapter 11 Cases denies any motion seeking approval of the priming liens pursuant to and in accordance with this Final Order as they relate to Genesis.

(i)     Limitation on Charging Expenses Against Collateral.   Notwithstanding anything to the contrary contained herein, no costs or expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Facility Lender and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Facility Lender, and nothing contained in this Final Order shall be deemed to be a consent by the DIP Facility Lender to any charge, lien,

assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

13. <u>Binding Effect on Debtors</u>. Effective as of the date of entry of the First Interim Order, except as otherwise set forth herein, the Debtors' Stipulations and releases are binding in all circumstances upon the Debtors.

14. <u>Binding Effect on Non-Debtor Third Parties</u>. The Debtors' Stipulations and releases herein shall be binding upon the Debtors' estates and each party-in-interest, except with respect to any party in interest that (a) ***first,*** by the seventy-fifth (75th) day after entry of the First Interim Order (the "<u>Challenge Period</u>"), files a motion seeking standing to commence a contested matter or adversary proceeding (a "<u>Motion for Standing</u>") challenging or otherwise objecting to any of the Debtors' Stipulations (each, a "<u>Challenge</u>"), which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge (a "<u>Draft Complaint</u>"), and (b) ***second,*** obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge (a "<u>Successful Challenge</u>"). Nothing in this Final Order shall be construed to grant standing to any party in interest to bring any Challenge on behalf of the Debtors' estates. The Debtors' Stipulations shall be binding upon (x) the Debtors' estates and each party in interest that did not timely filing a Motion for Standing on the day following the termination of the Challenge Period (the "<u>Challenge Period Termination</u>"); and (y) each party that filed a Motion for Standing (i) as to each Debtors' Stipulation not expressly challenged in the Draft Complaint, on the Challenge Period Termination; and (ii) as to each Debtors' Stipulation expressly challenged in the Draft Complaint, on the day after the Motion for Standing is denied, or if the Motion for Standing is granted, on the day after the Challenge is fully and finally adjudicated. If the Chapter 11 Cases are converted to cases under chapter 7 ("<u>Successor Cases</u>") or if a chapter 11 trustee is appointed,

in each case prior to the Challenge Period Termination, the Challenge Period for the chapter 7 trustee or such chapter 11 trustee, as applicable, shall be extended until 30 days after the appointment of such chapter 7 trustee or chapter 11 trustee.

15.     Upon Challenge Period Termination, unless expressly subject to a timely pending Challenge or a Successful Challenge: (i) any and all payments made to or for the benefit of the Prepetition Secured Party or Genesis or otherwise authorized by this Final Order (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination (whether equitable, contractual, or otherwise), recharacterization, defense, disallowance, recovery, or avoidance by any party in interest, (ii) any and all Challenges (other than any Successful Challenge) by any party-in-interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition Secured Obligations and the Genesis Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including any chapter 11 or chapter 7 trustee.  And once a timely pending Challenge is fully and finally adjudicated, if that Challenge is not then a Successful Challenge, clauses (i) through (iv) in the immediately preceding sentence shall then become binding upon the party having asserted such Challenge.

**D.     Perfection, Relief from Stay, and Additional Terms and Rights as to the DIP Facility Lender, Genesis, and the Prepetition Secured Party**

16.     <u>Additional Perfection Measures</u>.  The DIP Facility Lender, Genesis, and the Prepetition Secured Party shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Term Sheet, the First Interim Order, the Second Interim Order, and this Final Order (including, without limitation,

the taking possession of any of the DIP Collateral (in accordance with the terms of the DIP Term Sheet), or the taking of any action to have security interests or liens noted on certificates of title or similar documents).

17.    <u>Budget</u>.  The Debtors shall not make disbursements in excess of those projected in the Budget and shall not otherwise deviate from the terms of the Budget and applicable variances, without the written consent of each of: (i) the DIP Facility Lender and (ii) the Prepetition Secured Party, subject to an allowed cumulative four-week variance not to exceed ten percent (10%), from the amount in the "Total Disbursements" line in the Budget, as set forth in the DIP Term Sheet. With respect to those "Other Outflows" titled "Capital Expenditures" and "FIL Purchases," the Debtors shall procure the written consent of the DIP Facility Lender before expending the budgeted amounts.

18.    <u>Reporting</u>.  The Debtors shall provide reporting to the DIP Facility Lender and Prepetition Secured Party in accordance with the DIP Term Sheet, and shall provide any such reporting to Genesis substantially contemporaneously.

19.    <u>Credit Bid</u>.  Subject to any Prepetition Permitted Liens, the DIP Facility Lender shall have the right to credit bid the DIP Obligations, and the Prepetition Secured Party shall have the right to credit bid any outstanding Prepetition Obligations, under or pursuant to: (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a Chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

20.    <u>Amendment to DIP Facility Documents</u>.  The DIP Facility Lender, with the consent of the Debtors, is authorized to amend and/or modify the DIP Facility Documents without further order of the Court; <u>provided</u> that any such amendments or modifications must be in writing and

served upon counsel for the Prepetition Secured Party, Genesis, and the US Trustee; _provided_, _further_ that any amendments or modifications that would have the effect of increasing the borrowings available, shortening the maturity date of the DIP Facility, increasing the aggregate fees, or the rate or amount of interest payable, or otherwise materially adversely affecting the Debtors' rights or obligations, Genesis's rights or obligations, or the Prepetition Secured Party's rights or obligations, under the DIP Facility, shall be done only pursuant to further order of the Court; _provided further_ that any adjustments to the Budget that do not increase the borrowings available shall not require further order of the Court.

21.     _Binding Effect_.  The provisions of this Final Order shall be binding upon and inure to the benefit of all parties-in-interest in these Cases, including, without limitation, the Debtors, the DIP Facility Lender, the Genesis Debtors, the Prepetition Secured Party, and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for any Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the Debtors' estates), and shall inure to the benefit of the Debtors, the Genesis Debtors, the Prepetition Secured Party, the DIP Facility Lender and their respective successors and assigns; _provided_, _however_, that DIP Facility Lender shall have no obligation to extend any financing to any Chapter 7 trustee or similar responsible person appointed for the Debtors' estates, and neither Genesis nor the Prepetition Secured Party shall have any obligation to consent to the use of Cash Collateral in the event these chapter 11 cases are converted to cases under chapter 7.  Such binding effect is an integral part of this Final Order.

22. <u>Milestones</u>. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors have agreed to, and shall comply with, the following milestones, *provided* that any amendment or other modification of any such milestone shall be subject to the prior written consent of the DIP Facility Lender; *provided* further that any amendment or other modification of any such milestone that has the effect of removing it completely or extending it for more than five (5) days shall be subject to the prior written reasonable consent of Genesis (the "<u>Sale Milestones</u>"):

(a) On the Petition Date, the Debtors filed a motion seeking approval of the Sale of the Debtors' Assets.

(b) On or before August 17, 2023 or such later date as the DIP Facility Lender shall agree in writing, the Debtors shall have obtained an order from the Bankruptcy Court approving the Sale of the Debtors' Assets (August 17, 2023 or such earlier date as the Bankruptcy Court enters an order approving the Sale of the Debtors' Assets, the "<u>Sale Order Date</u>").

(c) Within 14 days of the Sale Order Date, or such later date as the DIP Facility Lender shall agree in writing, the Sale of the Assets shall be consummated.

23. <u>Events of Default</u>. Until the payment in full of the DIP Obligations, the occurrence of any of the following events, unless waived by the DIP Facility Lender in writing (which may be by electronic mail) and in accordance with the terms of the DIP Facility Documents, shall constitute an event of default hereunder (collectively, the "<u>Events of Default</u>"):

(a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants or obligations under this Final Order, including, without limitation, failure to make any payment under this Final Order when due, or the failure to comply with any Sale Milestone;

(b) the occurrence and continuation of any Events of Default under, and as defined in, the DIP Term Sheet, or any other DIP Facility Documents;

(c) without the prior written consent of the DIP Facility Lender, Genesis, and the Prepetition Secured Party, as applicable, the entry of an order providing for (i) any modification, stay, vacatur, or amendment to this Final Order, or any other use of the DIP Collateral, the Genesis Collateral, or the Prepetition Collateral; (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expense

of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claims, the Genesis Adequate Protection Superpriority Claims, or the Prepetition Secured Party Adequate Protection Superpriority Claims, other than the Carve-Out and the Prepetition Permitted Liens; (iii) any lien on any of the DIP Collateral with priority equal or superior to the DIP Facility Liens, except as specifically permitted by the DIP Facility Documents; (iv) without the prior written consent of the Prepetition Secured Party, any lien on any of the Prepetition Collateral with priority equal to or superior to the Prepetition Liens or Prepetition Secured Party Adequate Protection Liens; (v) without the prior written consent of Genesis, any lien on any of the Genesis Collateral with priority equal to or superior to the Genesis Liens or the Genesis Adequate Protection Liens;

(d)    the filing by the Debtors, the Debtors supporting, or the failure of the Debtors to timely oppose any motion or application seeking entry of an order of the nature described in section (c) immediately above; or

(e)    the Debtors' proposal or support for any plan of reorganization or liquidation or sale of all or substantially all of the Debtors' assets or equity, or order confirming such plan or approving such sale, that is not conditioned upon the payment in full of the DIP Obligations upon the consummation of such plan or sale.

24. Upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, other than as set forth in this Final Order: (a) the DIP Facility Lender may send a written notice to the Debtors, Genesis, and the U.S. Trustee (any such declaration shall be referred to herein as a "Termination Declaration") declaring (1) all DIP Obligations owing under the DIP Facility Documents to be immediately due and payable, (2) the commitment of the DIP Facility Lender to make DIP Loans to be terminated, whereupon such commitments and obligation shall be terminated to the extent any such commitment remains under the DIP Facility, (3) the termination of the DIP Facility and the DIP Facility Documents as to any future liability or obligation of the DIP Facility Lender, but without affecting any of the DIP Liens or the DIP Obligations, and (4) the application of the Carve-Out

has occurred; (b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Facility Documents; and (c) the DIP Facility Lender, Genesis, and/or the Prepetition Secured Party, as applicable, may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, other than to pay expenses set forth in the Budget that are necessary to avoid immediate and irreparable harm to the Debtors' estates. Notwithstanding anything contained herein, the earliest date on which a Termination Declaration shall be effective is upon five (5) business days' prior written notice of such Termination Declaration given to the Debtors and the U.S. Trustee, referred to herein as the "Termination Date." Following a Termination Date, neither the DIP Facility Lender nor Genesis nor the Prepetition Secured Party shall be required to consent to the use of any Cash Collateral or provide any loans or other financial accommodations under the DIP Facility. The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to Genesis, and the U.S. Trustee.

25.     Genesis Debtors' Reservation of Rights.  Nothing in this Final Order shall limit any rights of the Genesis Debtors against the DIP Facility Lender arising out of any foreclosure that adversely affects the value of the Genesis Collateral, as a result of the DIP Facility Lender's failure to act in a commercially reasonable manner in connection with such foreclosure; provided that the Genesis Debtors acknowledge that the language in section 12(g)(iv) was included in this Final Order at their request as additional adequate protection for the Genesis Debtors with respect to the Genesis Collateral.

26.     Hessler Reservation of Rights.  Thomas Hessler (or an entity he controls) shall have seven (7) business days from the date of this order to commit a fully funded debtor-in-possession financing facility on terms that the Debtors, in their business judgment and in consultation with

the Subchapter V Trustee, deem more advantageous to the estates than those of the DIP Facility (taking into account all factors, including but not limited to proposed economics and a path towards a successful emergence from chapter 11), which sufficiently fund the Debtors' allowed administrative expenses (including the complete refinance of the DIP facility). The Debtors shall consider any such committed financing in good faith, and shall consult with the Subchapter V Trustee about any such committed financing facility.

27.     Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Cases (and, to the extent not satisfied in full, in cash, the DIP Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases unless permitted under the DIP Facility Documents, and the terms and provisions of this Final Order, as well as the DIP Facility Superpriority Claims, the DIP Facility Liens, the adequate protection granted pursuant to this Final Order, and/or the DIP Facility Documents, shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Final Order and the DIP Facility Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash, and discharged.

28.     Authorization to Act.  Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees, and all other amounts as provided under and subject to the terms of this Final Order and the DIP

Facility Documents, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility and this Final Order.

29.     <u>Insurance Policies</u>.  Each of the Prepetition Secured Party, Genesis, and the DIP Facility Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy with respect to which the Debtors benefit which in any way relates to the Prepetition Collateral, the Genesis Collateral, or the DIP Collateral.

30.     <u>Subsequent Reversal</u>.  If any or all of the provisions of this Final Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of the Bankruptcy Court or any other court, Genesis, the Prepetition Secured Party, and the DIP Facility Lender shall be protected to the fullest extent permitted by section 364(e) of the Bankruptcy Code.

31.     <u>Effect of Dismissal of Cases</u>.  If the Cases are dismissed, converted, or substantively consolidated, then such dismissal, conversion, or substantive consolidation of these Cases shall not affect the rights of Genesis, the DIP Facility Lender, and the Prepetition Secured Party (to the extent of adequate protection provided hereunder) under their respective documents or this Final Order, and all of the respective rights and remedies thereunder of the DIP Facility Lender, Genesis (to the extent of adequate protection provided hereunder), and the Prepetition Secured Party (to the extent of adequate protection provided hereunder) shall remain in full force and effect as if the Cases had not been dismissed, converted, or substantively consolidated.  If an order dismissing any of the cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (y) the priming liens, security interests, and/or replacement security

interests granted to the DIP Facility Lender and, as applicable, Genesis and the Prepetition Secured Party pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and adequate protection obligations shall have been paid and satisfied in full (and that such priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest), and (z) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the liens and security interests referred to in clause (y) above.

32.     <u>Findings of Fact and Conclusions of Law</u>.  This Final Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable effective as of the Petition Date immediately upon the entry thereof.

33.     <u>Controlling Effect of Final Order</u>.  To the extent any provision of this Final Order conflicts with any provision of the Motion, any prepetition agreement or any document executed in connection with the DIP Facility, the provisions of this Final Order shall control.

34.     <u>Adequate Notice</u>.  The notice given by the Debtors of the Final Hearing was given in accordance with Bankruptcy Rule 4001(c)(2).  The Debtors shall promptly e-mail, mail or fax copies of this Final Order to (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' twenty (20) largest unsecured creditors or their counsel, (c) counsel to the DIP Facility Lender and the Prepetition Secured Party, (d) counsel to Genesis; (e) all known holders of filed liens on the Debtors' assets, (f) the Subchapter V Trustee, and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

Dated: August 3rd, 2023
Wilmington, Delaware

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE